**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

DONNA GRIFFIN,              )
                                    )
            Plaintiff,       )
                                    )      No. 19 C 8135
      v.                   )
                                    )      Judge Sara L. Ellis
CITY OF CHICAGO, a municipal corporation,  )
                                    )
            Defendant.     )

## OPINION AND ORDER

In 2015, Donna Griffin was training to become a Fire Paramedic with the Chicago Fire Department ("CFD") at the CFD's Training Academy ("Academy"). After Griffin was injured performing a physical test that, according to her, the CFD instituted solely to eliminate women from the Academy, the CFD terminated Griffin's employment. Griffin and several other female paramedics subsequently filed a lawsuit against the City of Chicago (the "City") alleging that the City terminated their employment because of their sex. *See Livingston v. City of Chicago*, No. 16 C 10156 (N.D. Ill.) ("*Livingston*"). In connection with the parties' attempts to settle the *Livingston* case, the City agreed to place Griffin in the April 2019 Fire Paramedic Academy class if she received medical clearance to do so. Griffin, however, did not obtain this clearance. Griffin thereafter applied to enter a later Academy class, but the City denied her application and informed her that she was disqualified from any future employment with the City. These events led Griffin to file the above-captioned lawsuit against the City ("*Griffin*"),[1] in which Griffin alleges that the City discriminated against her based upon sex and disability and retaliated against her for complaining about the City's sex discrimination in violation of Title VII of the

---

[1] A different judge initially oversaw the *Griffin* case, but Griffin asked the undersigned, who is overseeing the *Livingston* case, to reassign *Griffin* to her docket. The Court granted Griffin's request, and the Executive Committee assigned *Griffin* to the undersigned in February 2020.

Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*; the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*; and the Illinois Human Rights Act ("IHRA"), 775 Ill. Comp. Stat. 5/1-101 *et seq.* The City now moves to dismiss Griffin's complaint under Federal Rule of Civil Procedure 12(b)(6).

The Court grants in part and denies in part the City's motion to dismiss [9]. The Court dismisses Griffin's claims to the extent they rely upon the City's March 2019 failure to medically clear her as an adverse employment action because Griffin forfeited or waived any contention that this is the case. But Griffin may proceed with her claims to the extent they rely upon (1) the City's April 2019 discharge of Griffin from the Academy; (2) the City's June 2019 denial of Griffin's application; and (3) the City's ineligible for rehire ("IFR") determination barring Griffin from all subsequent City employment. Griffin has stated plausible claims for relief based on the first two alleged adverse employment actions, and in its reply, the City withdrew its motion to dismiss with respect to the third alleged action.

## BACKGROUND[2]

Griffin is a licensed paramedic. In 2015, she entered the Academy as a Fire Paramedic candidate. At the Academy, the CFD required Griffin to take two physical tests: a "Lifting and

---

[2] In setting forth the relevant background, the Court has accepted as true all well-pleaded factual allegations from Griffin's complaint. *Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1019 (7th Cir. 2013). The Court has also considered "documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice." *Id.* at 1019–20 (citation omitted). Relevant here, the Court has taken judicial notice of filings and hearing transcripts from the *Livingston* litigation. *See H.A.L. NY Holdings, LLC v. Guinan*, 958 F.3d 627, 631–32 (7th Cir. 2020) (in reviewing a Rule 12(b)(6) motion to dismiss, taking judicial notice of the contents of records from a prior district court case involving the same litigant); *Daniel v. Cook Cty.*, 833 F.3d 728, 742 (7th Cir. 2016) ("Courts routinely take judicial notice of the actions of other courts or the contents of filings in other courts."); *Cameron v. Patterson*, No. 11 C 4529, 2012 WL 1204638, at *1 (N.D. Ill. Apr. 10, 2012) ("Courts may take judicial notice of public records, such as complaints, pleadings, and transcripts from another proceeding when deciding a motion to dismiss."). The Court has also considered additional facts set forth in Griffin's opposition and the attached exhibits, so long as those facts are consistent with her complaint. *See Heng v. Heavner, Beyers & Mihlar, LLC*, 849 F.3d 348, 354 (7th Cir. 2017); *Runnion ex rel. Runnion v. Girl Scouts of Greater Chi. & Nw. Ind.*, 786 F.3d 510, 528 n.8 (7th Cir. 2015).

Moving Sequence" and a "Step Test." These tests, however, did not measure a candidate's qualifications to work as a Fire Paramedic; rather, the CFD administered these tests solely to eliminate women from the Academy. Griffin was injured while performing the Lifting and Moving Sequence. The following year, in August 2016, the CFD terminated Griffin's employment.

In October 2016, Griffin (who was known as Donna Ruch at the time) and several other female paramedics filed the *Livingston* lawsuit, alleging that the City discriminated against them based on their sex. In connection with the parties' attempts to make progress in settling *Livingston*, the City agreed to conditionally hire Griffin as a CFD Fire Paramedic candidate pending medical processing. The City and Griffin memorialized this agreement in a term sheet titled "Proposed Hiring Opportunity for the First 2019 Paramedic Training Academy Class" (the "Term Sheet"), which sets forth certain "terms and conditions relating to a potential hiring opportunity in 2019" for Griffin. *Griffin*, Doc. 20-1 at 2. According to the Term Sheet, Griffin had to meet all of the CFD's current hiring standards, which included passing a medical evaluation, to enter the April 2019 Paramedic Training Academy class.[3] The Term Sheet further provides that the CFD's Medical Division would evaluate Griffin's medical fitness for hire. If the Medical Division determined that Griffin was not medically fit for duty, and Griffin disputed this determination in good faith, the parties agreed that an independent medical examination ("IME") would determine Griffin's fitness for duty. If an IME was necessary, Griffin would select a physician from an already-compiled list of physicians to perform the IME. The parties further agreed that the results of the IME as to Griffin's fitness for duty "shall be binding upon the parties." *Id.* at 3 (¶ 2(g)).

---

[3] The Court interpreted this provision as requiring placement in a training class by April 1, 2019. *Livingston*, Doc. 125 at 6:17–7:22.

Griffin began processing for entry into the Academy in September 2018. She was still undergoing processing in March 2019 when the City determined that it would not medically clear Griffin for instatement to the Academy. According to the City, it would not clear Griffin because further medical evaluation was necessary due to her use of alprazolam and trazodone. At the time, Griffin suffered from a mental health disability (insomnia and adjustment disorder) or the City regarded her as having a mental health disability. A physician had prescribed Griffin alprazolam and trazodone to treat her insomnia and adjustment disorder. Griffin's physician had also given her written medical clearance before the City's refusal to medically clear her.

On March 27, 2019, the Court held a hearing in *Livingston*. At the hearing, the parties told the Court that the CFD's medical director would not definitively grant or deny Griffin medical clearance at that point. When the Court asked if there was any issue with Griffin undergoing an IME, Griffin's counsel had "no objection to carrying out the IME process that's in the term sheet"; to the contrary, she believed that the parties "should go right now to the agreed-upon IME process." *Livingston*, Doc. 132 at 7:14–15, 9:7–20, 11:23–24. The City also had no objection to proceeding with the IME process set forth in the Term Sheet. Accordingly, the Court instructed the parties to have Griffin undergo an IME.

The day after the March 27 hearing, an addictions specialist verified that Griffin was not dependent on any medication and could safely perform all the essential functions of a Fire Paramedic.[4] The parties also agreed that Dr. David Marder would perform the IME. On March 29, Dr. Marder evaluated Griffin, but he was unable to determine Griffin's fitness for duty by

---

[4] Griffin alleges that the addictions specialist provided this verification before the City refused to medically clear her, but her filings in *Livingston* show that she did not see the specialist until after the City's refusal and the March 27 hearing. *Livingston*, Doc. 127 at 2 ("After the March 27 hearing, Griffin was found fit for duty by Dr. Eric Schieber, a board-certified psychiatrist and addiction specialist with 30 years of experience diagnosing and treating patients with addiction. Dr. Schieber 'performed a comprehensive diagnostic psychiatric evaluation of Griffin' on March 28[.]" (citation omitted)).

4

April 1, when Griffin was to start at the Academy if she was medically cleared. Dr. Marder stated that "the complex nature of [Griffin's] case . . . require[d] further investigation and possibly additional testing that would be determined after further review of her evaluation and supporting medical literature." *Livingston*, Doc. 127-4 at 2.

On April 1, Griffin filed an emergency motion for an order conditionally admitting her to the Academy while she completed her final medical processing. In doing so, Griffin argued that her conditional admission to the Academy would not harm the City because it could remove her from the Academy class if "the IME ultimately decide[d] that [she] is not fit for duty." *Livingston*, Doc. 127 at 12, 14. Later that day, the Court held a hearing on Griffin's motion. The Court ordered Griffin to report to the Academy the following day, April 2, and the parties to complete the IME process with Dr. Marder by April 10. During the hearing, the Court made clear that Griffin's admission to the Academy was conditioned on her being medically cleared by Dr. Marder. If Dr. Marder cleared Griffin, she could proceed with her training; if not, that was "the end of the line," and Griffin would revert to her status as of April 1, i.e., unemployed by the CFD. *Livingston*, Doc. 133 at 11:18–21, 17:5–17. Griffin, through her attorney, twice told the Court that she would accept the results of the IME:

> THE COURT: So in terms of the parties' agreement, whatever the IME result is is what the parties essentially are willing to live with, is that right?
>
> [Griffin's attorney]: Yes.
>
> *        *        *
>
> THE COURT: Okay. If the IME comes back and says she's not cleared, then would Ms. Griffin, according to the parties' term sheet, live with the conclusion of the IME?
>
> [Griffin's attorney]: Yes, it's binding.

5

*Id.* at 15:15–18, 16:22–25. The Court then gave Griffin the option of deferring until the June

2019 Academy class so that the IME process could proceed in a less compressed timeframe.

Griffin, however, chose to start with the April class.

On April 10, Dr. Marder provided his IME report, in which he found Griffin not fit for

duty. After receiving Dr. Marder's report, Griffin's attorney emailed the City's attorneys, stating

that "[w]e assume the [C]ity does not want Ms. Griffin to report to the academy tomorrow, but

please confirm." *Griffin*, Doc. 20-9 at 2. The City's attorneys confirmed this was the case, and

the next morning, the CFD discharged Griffin from her position as a Fire Paramedic candidate.

At a hearing in *Livingston* later that day (April 11), Griffin's attorney acknowledged that, based

on Dr. Marder's finding, Griffin had "reached the end of the line" under the parties' current

agreement. *Livingston*, Doc. 141 at 2:22–3:6. Even so, Griffin's attorney also indicated that

Griffin had already requested a hiring opportunity for the June 2019 Academy class.

In June 2019, Griffin re-applied for employment as a CFD Fire Paramedic. The City

initially accepted Griffin's application and placed her name on the referral list that it uses to hire

Fire Paramedic candidates. However, the City subsequently denied Griffin's application and

notified her that it had deemed her IFR because she did not clear her medication evaluation.

Meanwhile, the City has allowed men to complete paramedic training at the Academy despite

using alprazolam or trazodone, and the City employs numerous men who use alprazolam or

trazodone as paramedics and firefighters. The City has also allowed individuals who have not

complained about discrimination to use alprazolam or trazodone while attending the Academy or

working as Fire Paramedics.

After filing discrimination charges with Illinois' Department of Human Rights and the

Equal Employment Opportunity Commission and receiving right-to-sue letters, Griffin filed the

6

case here, in which she asserts three claims for relief against the City. In Count I, Griffin contends that the City violated Title VII by discriminating against her based on her sex and retaliating against her for complaining about illegal sex discrimination. In Count II, Griffin alleges that the City violated the ADA by discriminating against her based on her disability or perceived disability. And in Count III, Griffin alleges that the City violated the IHRA by discriminating against her based on her sex, discriminating against her based on her disability or perceived disability, and retaliating against her for complaining about illegal sex discrimination.

## LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint, not its merits. Fed. R. Civ. P. 12(b)(6); *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). In considering a Rule 12(b)(6) motion to dismiss, the Court accepts as true all well-pleaded facts in the plaintiff's complaint and draws all reasonable inferences from those facts in the plaintiff's favor. *Kubiak v. City of Chicago,* 810 F.3d 476, 480–81 (7th Cir. 2016). To survive a Rule 12(b)(6) motion, the complaint must assert a facially plausible claim and provide fair notice to the defendant of the claim's basis. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Adams v. City of Indianapolis*, 742 F.3d 720, 728–29 (7th Cir. 2014). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

## ANALYSIS

Griffin asserts a sex discrimination and retaliation claim under Title VII, a disability discrimination claim under the ADA, and corresponding claims (sex discrimination, retaliation, and disability discrimination) under the IHRA. The Court applies Title VII's framework to

Griffin's IHRA sex discrimination and retaliation claims, *Volling v. Kurtz Paramedic Servs., Inc.*, 840 F.3d 378, 382–83 (7th Cir. 2016), and the ADA's framework to Griffin's IHRA claim based on disability discrimination, *Winkfield v. Chi. Transit Auth.*, 435 F. Supp. 3d 904, 909 (N.D. Ill. 2020). To adequately plead sex discrimination, Griffin must allege that the City subjected her to an adverse employment action based on her sex. *Carlson v. CSX Transp., Inc.*, 758 F.3d 819, 827 (7th Cir. 2014). For her retaliation claim, Griffin must "allege that she engaged in statutorily protected activity and was subjected to adverse employment action as a result." *Id.* at 828 (citation omitted). Finally, to allege discrimination based on disability, Griffin must allege "facts showing that (1) [s]he is disabled; (2) [s]he is qualified to perform the essential function of the job either with or without reasonable accommodation; and (3) [s]he suffered an adverse employment action because of [her] disability." *Gogos v. AMS Mech. Sys., Inc.*, 737 F.3d 1170, 1172 (7th Cir. 2013) (citations omitted) (internal quotation marks omitted).

The City makes two principal arguments in its motion to dismiss. First, it contends that Griffin cannot state plausible claims for discrimination or retaliation against the City because the City did not cause the alleged adverse employment actions at issue. Rather, according to the City, these actions resulted from Griffin's agreements and the Court's orders in *Livingston*. Second, the City contends that Griffin's lawsuit is contrary to policies encouraging settlement. The City also argues that aspects from the *Livingston* case constitute judicial admissions, but the Court considers and addresses this argument in the context of the City's principal arguments.

## I.    Causation

Each of Griffin's claims requires her to allege that the City subjected her to an adverse employment action based on a discriminatory or retaliatory motive. *See Carlson*, 758 F.3d at 827–28; *Gogos*, 737 F.3d at 1172. Griffin's complaint, as elaborated upon in her opposition

brief, *see Heng*, 849 F.3d at 354, identifies three alleged adverse employment actions: the City's (1) April 2019 discharge of Griffin from the Academy; (2) June 2019 denial of Griffin's application; and (3) IFR determination barring Griffin from all future City employment.[5]  The City does not dispute that the first two actions constitute adverse employment actions, and in its reply brief, the City withdrew its motion to dismiss with respect to the IFR determination, so the Court only addresses the City's causation arguments with respect to the City's April 2019 discharge of Griffin from the Academy and its June 2019 denial of Griffin's application.

## A.     The April 2019 Discharge from the Academy

The City first contends that it did not cause Griffin's April 2019 discharge from the Academy because in the *Livingston* litigation, Griffin agreed, and the Court ordered, that this action would take place if Dr. Marder declared Griffin medically unfit, which he did.  As an initial matter, it is unclear why the City framed its argument in this way.  An employer that fires an employee may have done so for a legitimate, non-discriminatory reason, but at the end of the day, the employer is still the actor that caused the firing to take place.  Here, it was the City (not Griffin or the Court) that discharged Griffin on April 11.  Nonetheless, despite the City's framing

---

[5] One could read Griffin's complaint as identifying another adverse employment action: the City's failure in March 2019 to medically clear her so that she could enter the April 2019 Academy class.  *E.g.*, *Griffin*, Doc. 1 ¶¶ 17, 24 (alleging that the City "refused to clear Griffin for work . . . because of her gender").  Although the City's opening motion identified this as an action that could not support Griffin's claims, Griffin did not argue otherwise in her opposition.  Instead, Griffin identified only the April 2019 discharge, the June 2019 application denial, and the IFR as the three adverse employment actions at issue. *Griffin*, Doc. 20 at 1–2 (asserting that she filed this lawsuit because of these "three discrete actions"); *id.* at 2, 15 (asserting that the City took adverse action against her "by removing her from the April 2019 Academy, denying her admission to the June 2019 Academy, and barring her from all future City employment").  Thus, Griffin has waived, or at least forfeited, any contention that the March 2019 failure to medically clear her constitutes an adverse employment action, and the Court grants the City's motion to the extent Griffin intended to make this argument.  *See Henry v. Hulett*, 969 F.3d 769, 786 (7th Cir. 2020) (en banc) (defining waiver as the "intentional relinquishment or abandonment of a known right" and forfeiture as "the mere failure to raise a timely argument, due to either inadvertence, neglect, or oversight" (citation omitted)); *Alioto v. Town of Lisbon*, 651 F.3d 715, 721 (7th Cir. 2011) ("[A] person waives an argument by failing to . . . develop arguments related to a discrete issue, and . . . by not responding to alleged deficiencies in a motion to dismiss." (citations omitted)).

of the issue, its motion adequately challenges Griffin's ability to allege that discrimination or retaliation caused her April 2019 discharge on the basis that the *Livingston* proceedings— Griffin's agreement and representations, the Court's rulings, and Dr. Marder's IME determination—reflect the true reasons for the discharge. The Court, therefore, interprets the City's motion in that way.

In arguing that her claims should proceed, Griffin questions Dr. Marder's conclusion and faults the City for relying upon this conclusion to discharge her from the Academy. According to Griffin, "[n]othing in the term sheet *required* the City to adopt the IME's report or remove her from the Academy." *Griffin*, Doc. 20 at 11. She also maintains that the Court did not require the City to remove her from the April 2019 Academy class if Dr. Marder found her unfit for duty.[6]

Griffin's assertions are not well taken. In the Term Sheet, Griffin expressly agreed that if an IME took place in connection with her opportunity to enter the April 2019 Academy class, the IME's determination as to her fitness for duty "shall be binding upon the parties." *Griffin*, Doc. 20-1 at 3 (¶ 2(g)). Griffin also confirmed in open court that the result of the IME process would be binding and that she would accept the IME conclusion, favorable or not. Once Griffin was conditionally admitted to the April 2019 Academy class, what outcome could have resulted from a "binding" determination that Griffin was medically unfit for duty other than her removal from the Academy? In fact, when Griffin filed her emergency motion to be conditionally admitted to the April 2019 Academy class, she argued that no harm would befall the City because it could remove her from the Academy if the IME thereafter found her unfit for duty. Furthermore, the Court made clear at the April 1 hearing that if Dr. Marder did *not* deem Griffin medically fit for

---

[6] Griffin further contends that she did not and cannot legally release or waive any future Title VII, ADA, and IHRA claims by agreeing to the Term Sheet or through representations made in court. The City, however, asserts that it is not arguing otherwise, so the Court does not consider this contention.

duty, that was "the end of the line," and Griffin would revert to her status as of that day, i.e., not employed by the CFD. *Livingston*, Doc. 133 at 11:18–21, 17:5–17.

Because Griffin did not satisfy the condition of her conditional instatement—medical clearance by the IME—the parties' agreement and the Court's rulings thereby required the City to remove Griffin from the Academy. Had Dr. Marder instead declared Griffin fit for duty, the Court has little doubt that Griffin would have asserted that Dr. Marder's determination and the Court's rulings prevented the City from removing her from the April 2019 Academy class (if the City had attempted to do so). Yet because Dr. Marder declared her unfit for duty, Griffin now claims that the City should have just ignored Dr. Marder's report and allowed her to stay in the Academy anyway. Griffin wants to have it both ways: she wants to enjoy the upside of the agreed-to and Court-ordered IME process without being bound to its downside.

That said, at the motion to dismiss stage, the Court only asks whether Griffin has stated *plausible* discrimination and retaliation claims with respect to her April 2019 discharge, and the Court cannot conclude that Griffin's "heads I win, tails you lose" approach prevents her from doing so. *See Indep. Tr. Corp. v. Stewart Info. Servs. Corp.*, 665 F.3d 930, 934–35 (7th Cir. 2012) (at the Rule 12(b)(6) motion to dismiss stage, "a plaintiff's claim need not be probable, only plausible"). At the outset, Griffin's representations in *Livingston* regarding the binding effect of the IME are arguably legal conclusions that cannot constitute binding judicial admissions. *See Sommerfield v. City of Chicago*, No. 08-CV-3025, 2018 WL 1565601, at *3 (N.D. Ill. Mar. 31, 2018) ("Because these are legal conclusions rather than facts, the judicial admission doctrine does not apply to them."); *Cornell v. BP Am. Inc.*, No. 14 C 2123, 2015 WL 5766931, at *5 (N.D. Ill. Sept. 30, 2015) ("[F]actual admissions can be binding as judicial admissions; admissions of legal conclusions cannot." (citation omitted)). But even if Griffin's

11

representations in *Livingston* were about factual (instead of legal) issues, they would not constitute admissions that bind her in *this* litigation because "a statement made in one lawsuit cannot be a judicial admission in another." *Kohler v. Leslie Hindman, Inc.*, 80 F.3d 1181, 1185 (7th Cir. 1996); *cf. Soo Line R.R. Co. v. St. Louis Sw. Ry. Co.*, 125 F.3d 481, 483 (7th Cir. 1997) (finding that the plaintiff's complaint in the case at issue contained binding judicial admissions). Even though Griffin and the City are both parties in the *Livingston* and *Griffin* litigations and this Court oversees both litigations, they are still separate litigations. Griffin's representations in *Livingston* may be evidence in this (the *Griffin*) litigation, *Kohler*, 80 F.3d at 1185, but they do not conclusively negate factual claims that Griffin might make in this litigation, as judicial admissions do, *Robinson v. McNeil Consumer Healthcare*, 615 F.3d 861, 872 (7th Cir. 2010); *Keller v. United States*, 58 F.3d 1194, 1198 n.8 (7th Cir. 1994) (explaining the binding effect of judicial admissions).

Similarly, the Court's rulings in *Livingston* do not necessarily dictate its resolution of Griffin's claims in this litigation. *Cf. Camreta v. Greene*, 563 U.S. 692, 709 n.7 (2011) ("A decision of a federal district court judge is not binding precedent . . . even upon the same judge in a different case." (citation omitted)). To show that the Court's rulings in *Livingston* definitively preclude Griffin's allegations in this case, the City would have had to demonstrate that claim preclusion (res judicata), issue preclusion (collateral estoppel), or some other theory of estoppel applies. *See Allen v. McCurry*, 449 U.S. 90, 94 (1980) (explaining that the doctrines of res judicata and collateral estoppel preclude parties from relitigating issues in certain circumstances); *Gen. Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1081–83 (7th Cir. 1997) (finding that the district court erred in relying upon a court finding from an earlier case to dismiss the plaintiff's claim under Rule 12(b)(6) and noting that the court could not

12

"achieve through judicial notice what it cannot achieve through collateral estoppel"). The City, however, does not argue in its motion to dismiss that the elements of claim preclusion, issue preclusion, or any other estoppel theory are met. In any event, these doctrines are affirmative defenses, Fed. R. Civ. P. 8(c)(1); *McDonald v. Adamson*, 840 F.3d 343, 347 (7th Cir. 2016), and "courts should usually refrain from granting Rule 12(b)(6) motions on affirmative defenses," *Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 690 (7th Cir. 2012); *see also id.* ("The mere presence of a potential affirmative defense does not render the claim for relief invalid.").

The Court's ability to take judicial notice of Griffin's representations and the Court's rulings in *Livingston* does not lead to a different result. There is a reasonable dispute as to the *effect* these representations and rulings have on Griffin's claims in this litigation, so it is inappropriate for the Court to make a definitive finding regarding that effect based on judicial notice, especially at this early stage of the litigation. *See Gen. Elec. Capital*, 128 F.3d at 1083 ("The application of a previous finding to a latter proceeding must be beyond reasonable dispute before a court may take judicial notice[.]"); *see also Daniel*, 833 F.3d at 742 ("Judicial notice is a powerful tool that must be used with caution."). Nor do the City's citations to *Bell v. United States*, 301 F. Supp. 3d 159 (D.D.C. 2018) and *Ogunsalu v. Nair*, No. 03CV00320 IEG (BLM), 2006 WL 8448017 (S.D. Cal. June 7, 2006) convince the Court otherwise. To be sure, the courts in both *Bell* and *Ogunsalu* dismissed the plaintiff's claim under Rule 12(b)(6) based, at least in part, upon a court ruling from another case ordering the plaintiff to submit to an IME. *See Bell*, 301 F. Supp. 3d at 160–64; *Ogunsalu*, 2006 WL 8448017, at *1–2, *5–7. And in *Ogunsalu*, the plaintiff also entered a stipulation regarding the IME in the other case. 2006 WL 8448017, at *7. But neither *Bell* nor *Ogunsalu* addressed discrimination and retaliation claims like Griffin's

13

claims here.  Nor did either court provide persuasive reasoning to support its decision that proceedings from a separate litigation conclusively negated an element of the plaintiff's claim.  *See Bell*, 301 F. Supp. 3d at 164; *Ogunsalu*, 2006 WL 8448017, at \*7.  For instance, neither court analyzed whether this was appropriate given the requirements necessary to invoke the judicial admission, claim preclusion, or issue preclusion doctrines.  Thus, to the extent *Bell* and *Ogunsalu* are even relevant, the Court declines to follow them.

Ultimately, while the proceedings in *Livingston* provide justifications for the City's discharge of Griffin on April 11, it is plausible that these justifications are not the *actual* reasons for the discharge.  This is what Griffin essentially alleges—that the real reasons for her discharge were not the representations and rulings in *Livingston*, but discriminatory and retaliatory motives.  *See Santos v. Cty. of Lake*, No. 2:17-CV-273-TLS-APR, 2020 WL 2839194, at \*4–5 (N.D. Ind. June 1, 2020) (at the motion to dismiss stage, rejecting the defendant's argument that the plaintiff's termination was caused by his violations of Merit Board Rules, as opposed to disability, where the plaintiff's lawsuit challenged whether those violations "were the real reason for his discharge").  It is plausible that Griffin could obtain discovery in this case that backs up this allegation.  *See Pillows v. Cook Cty. Recorder of Deeds Office*, No. 18 C 7497, 2019 WL 5654872, at \*6 (N.D. Ill. Oct. 31, 2019) (noting that "evidence of the reason(s)" for the defendant's termination of plaintiffs was "largely, if not solely, in the [defendant's] possession").  If Griffin does so, and she is not otherwise precluded from pursuing her discrimination and retaliation claims, she may be able to succeed on these claims.  This plausibility is sufficient to survive the City's motion to dismiss.  *See Indep. Tr.*, 665 F.3d at 934–35; *see also Santos*, 2020 WL 2839194, at \*5 (what constituted the real reason for the plaintiff's discharge was "a factual question that cannot be resolved" at the Rule 12(b)(6) stage).

Accordingly, Griffin may proceed with her claims based on her April 2019 discharge from the Academy. The Court denies the City's motion on this point.

### B.      The June 2019 Denial of Griffin's Application

The City also contends that it did not cause the June 2019 denial of Griffin's application because Griffin had no right to enter the June 2019 Academy class under the Term Sheet. Similar to the April 2019 discharge, however, it was the City (not Griffin, the Court, or any other person or entity) that denied Griffin's application in June 2019. This remains true whether Griffin did or did not have a contractual right under the Term Sheet to enter the Academy as part of the June 2019 Academy class.

The relevant question is whether Griffin has plausibly alleged that discriminatory and retaliatory motives were the bases underlying the City's June 2019 denial of her application. She has. Griffin alleges that the City "refused to allow her to enter a subsequent training academy" class because of her gender, her complaints about illegal sex discrimination, and her disability. *Griffin*, Doc. 1 ¶¶ 17, 18, 21, 24–26. She further alleges that the City has allowed men who use alprazolam or trazodone—the medications that Griffin had taken or was taking when she went through the medical evaluation process in March and April 2019—to train and work as Fire Paramedics and that the City has also allowed individuals who have not complained of discrimination to use these medications while training or working as Fire Paramedics. These allegations plausibly state claims for relief based upon the City's June 2019 denial of Griffin's application. *See Indep. Tr.*, 665 F.3d at 934–35.

True, Griffin's attorney agreed in a *Livingston* hearing after Dr. Marder issued his report that Griffin had "reached the end of the line" under the Term Sheet. *Livingston*, Doc. 141 at 2:14–3:6. But this a legal conclusion made by Griffin's attorney in a separate litigation and, for

the reasons already discussed, it is not binding in this litigation. *See Kohler*, 80 F.3d at 1185; *Sommerfield*, 2018 WL 1565601, at *3; *Cornell*, 2015 WL 5766931, at *5; *Kawasaki Kisen Kaisha, Ltd. v. Plano Molding Co.*, No. 07 C 5675, 2013 WL 3791609, at *3 (N.D. Ill. July 19, 2013) ("A counsel's legal conclusions, however, are not binding as judicial admissions"). What is more, even if Griffin had no more rights under the Term Sheet, the Term Sheet only appears to address a proposed hiring opportunity for the first 2019 Paramedic Training Academy Class, i.e., the April 2019 Academy class. The Term Sheet may not have entitled Griffin to enter the June 2019 Academy class, but the City does not point to anything in the Term Sheet that unambiguously prohibited Griffin from applying for the June 2019 (or any other subsequent) Academy class. The City also does not identify anything in the Term Sheet that would purportedly allow it to deny Griffin's application to a subsequent Academy class based on improper motivations. And based on its own review of the Term Sheet, the Court does not see any contractual language that would support either contention. The Court, therefore, denies the City's motion with respect to its June 2019 denial of Griffin's application.

## II. Policies Encouraging Settlement

Finally, the City argues that the Court should grant its motion because Griffin's lawsuit "is antagonistic to recognized public policy and this Court's policy of encouraging settlement." *Griffin*, Doc. 10 at 12. The City is correct that public policy and this Court generally encourage settlement. *See, e.g.*, *Nat'l Cas. Co. v. White Mountains Reinsurance Co. of Am.*, 735 F.3d 549, 556 (7th Cir. 2013); Judge Sara L. Ellis, Standing Order for Settlement Conferences, https://www.ilnd.uscourts.gov/_assets/_documents/_forms/_judges/ellis/Settlement%20 Conference%20Standing%20Order.Ellis.pdf. But even if the Court assumes that Griffin's lawsuit is antagonistic to these policies, it is unaware of any authority that justifies dismissing

16

her otherwise cognizable discrimination and retaliation claims under Rule 12(b)(6) based on such antagonism. Nor does the City cite any such authority.

The only case the City cites to support its argument, *Resolution Trust Corp. v. Krantz*, is inapposite. The defendants in *Resolution Trust* asserted an affirmative defense seeking indemnity based on a contractual provision that amounted to a prospective waiver of liability. No. 89 C 166, 1991 WL 148291, at *1 & n.3, *3 (N.D. Ill. July 24, 1991). The district court dismissed the defense because the contractual provision was void and unenforceable on its face; it violated a "strong public policy laid out by Congress," as well as "the public policy prohibiting prospective waivers." *Id.* at *3–4. Here, though, Griffin is not seeking to enforce a contractual provision, let alone one that the Court can say is void and violative of public policy on its face. *Resolution Trust* simply does not provide any support for the notion that the Court can or should dismiss Griffin's claims under Rule 12(b)(6) because the City asserts that they violate policies favoring settlement.

The City may have remedies or other avenues of relief if Griffin is truly "reneging on her end" of the parties' negotiated agreement. *Griffin*, Doc. 10 at 2. But dismissal of Griffin's discrimination and retaliation claims based on the general policy encouraging settlement is not one of them. The Court denies the City's motion to dismiss on this issue as well.

## CONCLUSION

For the foregoing reasons, the Court grants in part and denies in part the City's motion to dismiss [9]. The Court dismisses Griffin's claims to the extent they rely upon the City's March 2019 failure to medically clear her as an adverse employment action. However, Griffin may proceed with her claims to the extent they rely upon (1) the City's April 2019 discharge of

17

Griffin from the Academy; (2) the City's June 2019 denial of Griffin's application; and (3) the

City's IFR determination.


Dated: October 27, 2020

_____
SARA L. ELLIS
United States District Judge

18